UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                 CRIMINAL NO. 19-20501

v.                                HON. JUDITH E. LEVY

JOSHUA DEPRIEST,

        Defendant.

_____/

**Government's Response and Brief Opposing Defendant's Emergency**
**Motion for Revocation of Detention Order and for Release on Bond  (R. 39)**

        Joshua Depriest is a convicted internet predator with a sexual interest in young boys. Depriest pleaded guilty to enticing a seven year-old boy (MV-1) into creating and sending graphic images. At the time of his arrest, Depriest confessed to similarly sexually exploiting 20 to 30 other boys, all ages 8 to 9 years-old. Depriest was also a member of several Facebook groups that traded images and videos of young boys being raped and sexually exploited. Depriest faces a mandatory minimum sentence of ten years' imprisonment and a sentencing guideline range of 168 to 210 months' imprisonment. Depriest navigated the internet to identify, target, and manipulate vulnerable boys for his own sexual pleasure. His crimes did not require either him or his victims to leave their homes.  And now he wants bond.

Citing the COVID-19 pandemic, Depriest seeks release on bond to live with his in-laws in Houston.  Depriest has no ties to Detroit, or strong ties to any place, and no reason to return for sentencing.  His future involves at least a decade in prison, and his crimes can be committed with any internet connected device.  As a result of his guilty plea, detention is no longer just presumptively favored, it is statutorily mandated. *See* 18 U.S.C. § 3143(a)(2).  Depriest's release would pose a danger not just to MV-1 but also to other children and to the community at large. Moreover, Depriest is a serious risk of non-appearance. For these reasons and the reasons that follow, this Court should deny Depriest's motion for bond (R. 39).

MATTHEW SCHNEIDER
United States Attorney

s/*Lisandra Fernandez-Silber*
Lisandra Fernandez-Silber
Kevin Mulcahy
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9122
Lisandra.Fernandez-Silber@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                   CRIMINAL NO. 19-20501

v.                                HON. JUDITH E. LEVY

JOSHUA DEPRIEST,

               Defendant.

_____/

**Government's Response and Brief Opposing Defendant's Emergency
Motion for Revocation of Detention Order and for Release on Bond  (R. 39)**

     Depriest has entered a plea of guilty to coercion and enticement of a minor and faces a mandatory minimum sentence of ten years' imprisonment. Now, on the eve of sentencing, he requests bond. Because Depriest fails to meet his burden to show, by clear and convincing evidence, that he is not a flight risk or a danger to the community, this Court should follow the statutory mandate and deny his motion. *See* 18 U.S.C. § 3143(a)(2).

## I.    Facts

     On October 6, 2018, the parent of minor victim 1 (MV-1) reported to the Taylor Police Department that a distant relative of hers, Joshua Depriest, wrote sexual, inappropriate messages to her seven-year-old son via Facebook Messenger.

Depriest also sent nude images of adult males and requested nude images of MV-1. MV-1's mother reviewed the thread of the two chatting on Facebook and took screenshots of the exchange.

The messages included Depriest writing repeatedly to MV-1 to see pictures and videos of the boy's butt. Some of those messages follow.





The messages also included Depriest sending several disturbing pictures to MV-1, including a picture of an adult male's erect penis; a picture of an adult male's naked legs lifted in the air, exposing his anus and genitals; and an anime picture of two naked boys ejaculating. MV-1 wrote to Depriest in response, "I'm [MV-1] I'm a kid. I'm not allowed to se[e] that," and "stoppppppp[p]ppppp. Plz."  MV-1 also responded, "no more saying buts . . . Plz no more."

Depriest was relentless.  He repeatedly asked the boy for images and videos, and promised to join a chat MV-1 wanted Depriest to participate in via Facebook. Eventually, the boy broke down, providing Depriest what he wanted. MV-1 sent several images to Depriest. Depriest also asked, "one thing I didn't ask you was to

send me a pic of your penis.  If u want to." MV-1 refused to send a picture of his penis, but over the course of their communications, MV-1 sent three images of his unclothed buttocks to Depriest.  By the end of the chat, MV-1's mother found the thread, confronted Depriest online, and went to the police.

Taylor Police turned the case over to Homeland Security Investigations (HSI). MV-1 was forensically interviewed, and he identified Depriest as the person who requested the explicit pictures.

HSI obtained a search warrant for Depriest's Facebook page.  Although Depriest had deleted the conversation with MV-1, the Facebook search warrant return contained a remnant of a group chat between Depriest, MV-1, and another person.  The return also contained many messages indicating that Depriest engaged in three different groups that traded child pornography depicting boys that were approximately eight years old to teenagers. As part of these groups, Depriest received and distributed child pornography images and videos. Additionally, the return revealed message exchanges between Depriest and several young boys.  And it showed that Depriest sent the same disturbing, pornographic images that he sent to MV-1 to many other people.

On December 20, 2018, Depriest was arrested in Hartford, Connecticut. Depriest confessed to soliciting the images from MV-1. Depriest estimated that 20-30 other boys, ages 8 or 9, sent him explicit videos or photos of themselves at

Depriest's request. Depriest also confessed to the child pornography found in his Facebook account.

## II.    Procedural History

Pretrial Services for both the District of Connecticut and the Eastern District of Michigan recommended that Depriest be detained pending trial. Both noted the serious nature of the offenses charged and safety concerns, as well as Depriest's unstable living situation and lack of any significant ties to either district.

On December 20, 2018, Depriest made his initial appearance in the District of Connecticut.  On December 21, 2018, Depriest had a detention hearing, and the court ordered him temporarily detained. The court noted that the weight of the evidence against Depriest was strong, that he was subject to a lengthy period of incarceration if convicted, that he lacked a stable residence, that he lacked financially responsible sureties, and that he lacked community or family ties to the district. The court concluded that Depriest posed a serious risk of flight. (R. 6, Pg ID 26-27). The case was then removed to the Eastern District of Michigan.

On February 15, 2019, Depriest made his initial appearance in the Eastern District of Michigan and consented to detention. (R. 8; R. 10).

On July 25, 2019, a grand jury returned a four-count indictment against Depriest charging him with production of child pornography, coercion and

enticement of a minor, receipt of child pornography, and transfer of obscene material to a minor. (R. 23).

On December 18, 2019, Depriest entered a plea of guilty to coercion and enticement of a minor pursuant to a Rule 11 plea agreement. (R. 36). Depriest now faces a mandatory minimum of ten years and a sentencing guideline range of 168 to 210 months' imprisonment. The Court recently re-scheduled sentencing to May 26, 2020.

On April 9, 2020, Depriest filed the instant motion requesting release to his in-laws' home near Houston, Texas because of generalized concern about the coronavirus disease, COVID-19. (R. 39).

## III.      Analysis

### A. Depriest's Detention is Mandatory Under Section 3143(a)(2)

Because Depriest has already pleaded guilty, 18 U.S.C. § 3143 (rather than the less restrictive section 3142) governs his bond motion. *See* Fed. R. Crim. P. 46(c) ("The provisions of 18 U.S.C. §3143 govern release pending sentencing or appeal. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."). Moreover, due to the nature of his conviction—a sex offense against a child—detention pending sentencing is mandatory. Specifically, section 3143(a)(2) requires that, once a defendant has been convicted, a judicial officer:

**shall order** that a person who has been found guilty of an offense in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of a sentence be detained unless—

(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or

(A)(ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person;

   **and**

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added).  Here, Depriest's crime meets the Bail Reform Act's definition of a crime of violence as it involves an offense against a child found in Chapter 117 of the United States Code.  *See* 18 U.S.C. § 3156(a)(4) ("the term 'crime of violence' means— . . . (C) any felony under chapter 77, 109A, 110, or 117.")

In other words, after conviction, in serious child exploitation cases such as this one, detention is mandatory unless the court finds, first, that it is likely that the defendant will be granted an acquittal, *or* that the attorney for the government is going to recommend a sentence of time served. Only if that initial hurdle is met does the Court need to consider whether the defendant can meet the second hurdle: to show—by clear and convincing evidence—that he is not a flight risk or a danger to

the community. *See Gov't of Virgin Islands v. Clark*, 763 F. Supp. 1321, 1323 (D.V.I. 1991), *aff'd*, 989 F.2d 487 (3d Cir. 1993) ("it is the defendant's burden [under § 3143(a)(2)] to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the community") (citing *United States v. Strong*, 775 F.2d 504, 508 (3d Cir. 1985)).

Here, Depriest pleaded guilty (and therefore is not likely to be "granted an acquittal") and the mandatory minimum sentence means the government will not be recommending a sentence of time served.   According, Depriest's detention is mandatory under the terms of section 3143(a)(2).

### B. Depriest Does Not Meet the Requirements of Section 3145(c)

There remains the narrowest of exceptions found in 18 U.S.C. § 3145(c).  That section reads, in relevant part, "[a]  person subject to detention pursuant to section 3143(a)(2) . . . **and** who meets the conditions of release set forth in section 3143(a)(1) . . . *may* be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate." 18 U.S.C. § 3145(c) (emphasis added). To meet this exception, Depriest must show, by clear and convincing evidence, that he is not likely to flee or pose a danger to the safety of any other person (i.e., "the conditions of release found in 3143(a)(1)") and that "exceptional reasons" exist making detention inappropriate.  Depriest cannot meet his burden on either front.

### 1.  Risk of Flight and Danger to the Community

The typical bond factors used by courts for evaluating bond—found in 18 U.S.C. § 3142(g)—do not need to be evaluated in a section 3145(c) analysis.  Still, this Court has previously used these factors as guideposts in evaluating a similar bond motion.  *See United States v. Eubanks*, 17-20184 at *6, R. 527: Order Denying Defendant's Motion for Bond.  First, the nature and the circumstances of this offense demonstrate that no condition or combination of conditions would ensure the safety of the community if Depriest were released.  Depriest repeatedly hunted for and preyed on very young boys on the internet.  He has a sexual interest in prepubescent boys that he has acted on over and over again. Depriest himself told law enforcement that he asked for and obtained sexually explicit videos and photos from 20 to 30 boys, and that he guessed these children were eight to nine years old. Depriest has entered a plea of guilty to coercion and enticement of seven-year old MV-1, a crime that including soliciting images and videos from the child as well as sending the child graphic images. When not hunting for his own victims, Depriest engaged in repeated trading of child pornography images and videos from his trading partners on Facebook. As part of several child pornography trading groups on Facebook, Depriest distributed child pornography images and videos multiple times.

Importantly, the nature and circumstances of Depriest's crimes are exceedingly repeatable.  Depriest never needed to leave his residence or meet a child

face-to-face.  Instead, Depriest needs only an internet-capable device and time to repeat these life-altering crimes.  The COVID-19 pandemic, moreover, has resulted in thousands of children connected to the internet for homeschooling, socializing, and other activities.  This is a rich hunting ground for someone like Depriest.  The nature and circumstances of the crime favor detention.

Second, the weight of the evidence of danger and flight likewise favor detention.   As noted above, Depriest's danger is undeniable. Twenty to thirty children and their families had their lives forever altered by Depriest, who electronically snuck into their homes to prey on their boys.  The defendant cannot overcome his substantial burden of proving that he is not a danger given his wildly successful prior offenses involving children.  The same can be said for the weight of the evidence of Depriest's risk of non-appearance.  He and his husband change jobs and residences frequently: from San Diego to Arizona to Connecticut to Houston. This pair can pick up and move easily, do not own property or have children, and have every incentive to leave.

Third, Depriest's history and characteristics demonstrate that he is a flight risk. Depriest does not have a stable residence, and he has no ties to the Eastern District of Michigan. He is a 31-year-old man who resided in a specialized foster home for disabled children in California for most of his life. More recently, he moved to Connecticut with his husband for work, and they lived in a homeless

shelter and later in an apartment with a friend. Depriest's husband, who has now moved in with his retired parents in Texas, appears to be Depriest's only source of family support. Although Depriest has completed some college-level courses and worked at Walmart at the time of his arrest, he has limited resources and job skills.

Depriest's history and characteristics also demonstrate that no condition or combination of conditions could ensure the safety of the community if he is released. Depriest is an internet predator with a sexual interest in young boys, and he has repeatedly acted on it by manipulating vulnerable children on the internet into sending him sexually explicit photos and videos. He has also distributed child pornography to his trading partners on the internet. Should Depriest be released, resuming this criminal conduct would be as easy as getting his hands on any technological device and connecting to the internet from the comfort of his (or his in-laws') home. Depriest has repeatedly reached into the home of young boys to exploit them. In the case of MV-1, he obtained explicit photographs over the course of just a few hours. Moreover, as shown in this case, Depriest knows how to delete, and has deleted, evidence of his predatory communications with children.

Finally, as to the danger Depriest poses to others, it is significant. Depriest is dangerous. He manipulated many young boys into sending him sexually explicit photos and videos. He did this while living with his husband. Law enforcement has

been unable to identify most of these children. Releasing Depriest could put them, MV-1, and his family, and other children in danger.

## 2. Obstacles to Properly Supervising Depriest

Relevant to all of these section 3142(g) factors is the difficulty pretrial services would have supervising Depriest. For example, Pretrial Services officers must remain at least six feet away from the defendants they supervise. The officers are not conducting home inspections and cannot assess whether a defendant has an appropriate place to reside. At most, officers can conduct virtual tours of defendant's homes (which would require a device with internet connectivity), or talk with defendants from a distance, while in their cars or out in the defendants' front yards.

Importantly, the requirements of the Adam Walsh Act mandate electronic monitoring for defendants on bond (along with other restrictive conditions). *See* 18 U.S.C. § 3142(c)(1)(B) ("In any case that involves a minor under section [] 2422 [] any release order shall contain, at a minimum, a condition of electronic monitoring."). Thus, to lawfully release Depriest the Court would have to order pretrial services to outfit Depriest with a tether and, when necessary, physically inspect the tether for signs of damage. This puts pretrial service officers at unnecessary risk of infection. Moreover, COVID-19 puts limitations on pretrial services' ability to effectively supervise defendants like Depriest to ensure they do not have access to internet-capable devices. Taken together, the unreasonable risks

to pretrial services officers and the practical limitations on supervision favor detention.

### 3.  There Are No Exceptional Circumstances

Depriest does not allege that he has contracted COVID-19. Instead, he speculates that the COVID-19 pandemic subjects him to a heightened health risk and entitles him to release from his confinement. Depriest's main argument is that his custodial status increases his risk of contracting COVID-19, but he acknowledges that he does not have any pre-existing health conditions which would render him a high-risk individual. He is a healthy, 31-year-old man and fortunately not in the highest-risk group, which includes anyone over the age of 65. Depriest faces the same (or a lower) risk than every other detainee.  If this Court were to release Depriest despite his dangerousness, it would mean that practically every detainee could successfully argue for release.

We are sensitive to Depriest's concerns—which this Court has also expressed in other cases—about incarceration during the COVID-19 pandemic.  According to officials at the Federal Detention Center at Milan (where Depriest is being housed), as of the date of this filing there has been only one positive test for COVID-19. While there are eleven other positive tests among staff and inmates, those people work or reside in the Milan Federal Correctional Institute (FCI), which is a different building than that which houses Depriest.  The Bureau of Prisons is taking the

COVID-19 threat very seriously and is actively quarantining prisoners and isolating those who may have symptoms. The Bureau of Prisons has implemented precautionary measures across all BOP facilities, including FDC Milan, to reduce the risk of a COVID-19 outbreak.[1]  Those include the following:

- *Detainees Entering the Facility and Current Detainees*. The BOP manages an infectious disease management program as a matter of course, but in order to address the specific COVID-19 pandemic, BOP facilities, including Milan, have instituted additional measures, including: (i) all newly-arriving detainees and BOP inmates are screened for COVID-19 exposure risk factors and symptoms; (ii) all newly-arriving detainees/inmates are isolated in quarantine for 14 days as a matter of course, regardless of whether they display any symptoms or exposure risk factors; (iii) asymptomatic detainees/inmates with exposure risk factors are quarantined; and (iv) symptomatic detainees/inmates with exposure risk factors are isolated until medically cleared consistent with current guidelines.

- *Visitation*. FDC Milan has suspended in-person social visits and attorney visits for 30 days (starting on March 14, 2020), at which point the suspension will be reevaluated. (Exceptions for in-person attorney visits may be made by the facility, at the request of a defense attorney; however, none has been approved to date.)

- *Sanitation*. Sanitation efforts have increased at FDC Milan, with extra emphasis on high-traffic areas. Inmates have always had, and continue to have, access to disinfectant for use in their cell. In addition, educational medical literature regarding hand-washing and other sanitation measures is displayed for detainees/inmates.

- *Correctional Officers and Staff*. All staff are currently screened daily at the facility, including having their temperature taken. Staff have been advised that they must self-report any symptoms.

---

[1] The Bureau of Prison maintains updated information regarding its COVID-19 Action Plan at its public website: https://www.bop.gov/coronavirus/.

- *Other*. Operations and programs for detainees/inmates have been modified in order to assist with social distancing efforts.

FDC Milan has implemented heightened, reasonable precautions to mitigate the risk of COVID-19 spread, in the common interests of both prisoners and staff. Moreover, Depriest's request to be released from custody would endanger others as he is asking to travel some 1300 miles from Detroit to Houston to reside with his in-laws. Whether by plane or by car, such extensive travel provides a greater danger to spreading the virus than Depriest's current custodial status. Depriest's generalized concerns about COVID-19 do not qualify as "exceptional reasons" under Section 3145(c).

## C. Conclusion

As indicated throughout, the burden here rests on Depriest, not the Government. Section 3143(a)(2) mandates detention leaving only Section 3145's extraordinary circumstances standard available for Depriest to attempt to meet. He cannot meet it. Depriest acknowledges that he does not have the virus nor any pre-existing health conditions which would render him a high-risk individual of contracting COVID-19. And his COVID-19 concerns have no bearing on the issue of dangerousness. *See United States v. Sandles*, 9 F. App'x 377, 379 (6th Cir. 2001). But the evidence of Depriest's dangerousness and risk of non-appearance are high.

Courts in this district have been sensitive to the serious threat that COVID-19 poses to all members of the community, as well as the special risks to incarcerated

persons, but have nevertheless denied motions for release when careful consideration of the applicable Bail Reform Act provisions so warrants. *See, e.g.*, *United States v. Eubanks*, 17-cr-20184, R. 527 (E.D. Mich. Apr. 9, 2020) (Levy, J.) (noting that the Court is bound by 18 U.S.C. § 3143(a)(2) mandating detention for individuals convicted of particularly aggravated offenses); *United States v. Lee*, 19-cr-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020) (Leitman, J.) ("[T]he COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the [Bail Reform Act]."); *United States v. Bell*, 17-cr-20183, R. 436 (E.D. Mich. Apr. 3, 2020) (Goldsmith, J.) (noting that courts must evaluate the particularized risks posed to an individual defendant, and analyzing: (1) the original grounds for pretrial detention, (2) the specificity of defendant's stated COVID-19 concerns, (3) the extent to which the proposed plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others); *United States v. Harris*, 19-mj-30382, R. 20 (E.D. Mich. Apr. 2, 2020) (Cox, J.) (noting that releasing the defendant may well endanger the public and further strain pretrial services officers and local law enforcement officers who are already operating with limited resources).[2]

---

[2] Depriest cites *United States v. Knight*, 18-cr-20180, R. 97 (E.D. Mich. Mar. 24, 2020), a decision of this Court granting temporary release, but Knight had already

## IV.    Request for a Hearing

The Government respectfully requests that this Court hold a video hearing on Depriest's Emergency Motion for Revocation of Detention Order and for Release on Bond (R. 39) and asks that the Court include the access information in the docket entry and on the court's public website to ensure public access, and so that MV-1's mother can participate in the hearing pursuant to her rights under the CVRA. *See* 18 U.S.C. § 3771.

If the Court intends to order Depriest's release without a hearing, the Government requests that the Court notify the parties sufficiently in advance for the Government to determine whether it will seek an emergency stay pending a possible appeal to the Sixth Circuit.

---

been on probation for over a year and that the Court found he, unlike Depriest, had a respiratory condition that made him more vulnerable to COVID-19.

## V.   Conclusion

For the reasons offered by Pretrial Services, and all the reasons listed above,

Depriest should remain detained pending sentencing.

<div style="margin-left: 45%;">

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

<u>s/*Lisandra Fernandez-Silber*</u>
Lisandra Fernandez-Silber
Kevin Mulcahy
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
(313) 226-9122
Lisandra.Fernandez-Silber@usdoj.gov

</div>

Date: April 10, 2020

**Certificate of Service**

I hereby certify that on April 10, 2020, I electronically filed the Response for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system, which will send notification of such filing to all counsel of record via electronic mail.

> s/*Lisandra Fernandez-Silber*
> Lisandra Fernandez-Silber
> Assistant United States Attorney
> 211 W. Fort Street, Suite 2001
> Detroit, MI  48226
> (313) 226-9122
> Lisandra.Fernandez-Silber@usdoj.gov